UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-60331-CIV-COHN/SELTZER

HEATH COHEN,

    Plaintiff,

v.

GULFSTREAM TRAINING ACADEMY,
INC., a Florida corporation, and
GULFSTREAM INTERNATIONAL
AIRLINES, INC., a Florida corporation,

    Defendants.
_____/

## ORDER GRANTING IN PART PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Plaintiff's Motion for Partial Summary Judgment [DE 80], Defendant Gulfstream's Response thereto [DE 99], and the Plaintiff's Reply Memorandum [DE 119]. The Court has carefully considered all relevant filings and is otherwise fully advised in the premises.

### I.  BACKGROUND

Plaintiff Heath Cohen ("Plaintiff") filed this action against his former employers Gulfstream Training Academy, Inc. ("GTA"), and Gulfstream International Airlines, Inc. ("Defendants") for employment discrimination pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 1981, and the Florida Civil Rights Act. Cohen alleges that Defendants terminated him on January 6, 2006, because he is Jewish. In May of 2006, Defendants sued Plaintiff and others in Broward County Circuit Court for alleged misappropriation of proprietary business property. The present federal action was filed on March 8, 2007, after Plaintiff's receipt of a Right to Sue letter from the Equal Employment

Opportunity Commission ("EEOC").

On October 3, 2007, this Court granted Defendant GTA's motion to bring a counterclaim alleging violation of the federal Computer Fraud and Abuse Act ("CFAA") [DE 40].  In the Counterclaim, Defendant GTA alleges that Plaintiff accessed Defendant's laptop computer without authorization and/or in excess of his authorized access.  Counterclaim, ¶ 11 [DE 42].  In addition, Defendant alleges that Plaintiff deleted files from the laptop and inappropriately transferred Defendant's information to his personal computer to further a business that competes with GTA.  Id., ¶¶ 12-15.

Following a period of discovery, Plaintiff now moves for summary judgment on Defendants' affirmative defense of after-acquired evidence and on the counter-claim.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production

shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

## B.  After-Acquired Evidence "McKennon" Defense

Plaintiff moves for partial summary judgment as to Defendants' assertion of the after-acquired evidence defense.  This defense, established by the United States Supreme Court in McKennon v. Nashville Banner Publishing, Co., 513 U.S. 352 (1995), allows a defendant to prove that an employee would have been terminated had the defendant known of wrongful conduct, even though the defendant did not learn of the conduct until after the termination.  Defendants allege in their answer that had they

known Plaintiff was setting up a competitive business and diverting prospective students to his competing business, they would have terminated him.

Plaintiff's motion is based upon the assertion that the evidence in question is from the post-termination period and as such is not contemplated by the McKennon line of cases, which are limited to evidence of wrongdoing occurring prior to termination. The Eleventh Circuit has not directly ruled upon this issue, though in applying McKennon, the Court referred to "employee wrongdoing during employment." Walker v. Dunn Const. Co., Inc., 62 F.3d 374, 379 (11th Cir. 1995).

Defendants argue that the Eleventh Circuit has not ruled out use of evidence after termination and McKennon suggests a fact intensive, case by case analysis that precludes the bright line rule sought by Plaintiff. In Crapp v. City of Miami Beach, 242 F.3d 1017 (11th Cir. 2001), the Eleventh Circuit affirmed the district court's application of McKennon to vacate backpay and reinstatement awarded to a plaintiff police officer who had his state certification suspended after his termination. The Court agreed with the district court that while compensatory damages were still allowable, the suspension of the certification meant Plaintiff could not be rehired by the City. Crapp, 242 F.3d at 1021. The Court made no mention of the fact that the FDLE action was post-termination.

In addition, Defendants cite to other circuit decisions in opposing the motion. For example, the Eighth Circuit in Sellars v. Mineta, 368 F.3d 1058, 1084 (8th Cir. 2004), held that post-termination conduct is relevant in determining eligibility for front pay under Title VII. In Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 555 (10th Cir.

1999), the Tenth Circuit did not rule out the possibility that such conduct could be used to limit damages.[1]

Plaintiff cites to numerous district courts in other Circuits that have rejected use of post-termination events to invoke an after-acquired evidence defense. Plaintiff distinguishes Crapp (police officer) and Sellars (Federal Aviation Administration employee) as cases involving a plaintiff's loss of government certifications required to perform the previous job. However, what the Court finds significant in Crapp, Sellars and the present case is that the post-termination evidence directly flows from the conduct that occurred pre-termination. In Crapp and Sellars, the loss of a certification precluded the ability to perform the previous job. In the present case, the post-termination evidence of Cohen's actions corroborate the pre-termination evidence of beginning to set up a competing business.

Defendants have put forth evidence that Cohen took steps prior to his termination indicating he was setting up a competing business. See ¶¶ 8a to 8f, Defendants' Concise Statement of Material Facts [DE 100]. This competent deposition evidence, by itself, is sufficient to create issues of material fact that the after-acquired evidence defense was appropriately pled in this case. At this point, the Court is not inclined to preclude post-termination evidence that seeks to corroborate the Defendants' belief that Cohen in fact took such actions before termination.

---

[1] This Court relied upon those decisions in affirming a ruling by Magistrate Judge Seltzer that evidence of post-termination actions were discoverable. However, affirming a discovery order does not preclude this Court from reaching a different conclusion upon a de novo review of the legal issue.

Plaintiff also asserts that Defendants have failed to demonstrate that it would have immediately terminated Plaintiff had they known of the efforts to set up a competing business.  The parties apparently agree that such decisions were made jointly by Mark Ottosen, the President, and Thomas Cooper, Sr., the principal owner of the company.  Plaintiffs point to testimony by Ottosen that Plaintiff would not have been terminated, while Defendants respond with a declaration by Thomas Cooper, Sr. that he would have terminated Plaintiff, as he did with an employee allegedly in cahoots with Plaintiff to set up the business, Peter Clements.  Again, Defendants have submitted sufficient record evidence to create a material issue of disputed fact which precludes granting Plaintiff's motion.  Plaintiff's motion for partial summary judgment on the after-acquired evidence defense is therefore denied.

### C.  CFAA Counterclaim

With regard to the counterclaim, Plaintiff argues that GTA's damages under the CFAA are limited to costs associated with investigating and remedying damage to the computer.  At the discovery phase, this Court affirmed the Magistrate Judge's ruling allowing discovery on this issue because "the extent of damages under the CFAA is not settled law."  However, the Court does agree with Plaintiff that the legal issue as to the availability of certain types of damages is one this Court should properly decide at the summary judgment stage, construing any disputed facts in the light most favorable to Defendants.

The counterclaim in this case (brought only by Defendant GTA), alleges a violation of 18 U.S.C. § 1030(a)(5) (2007) for Plaintiff's unauthorized deletion of files

from his GTA laptop and/or his copying of files for his use to begin a competing company.  Counterclaim  [DE 42].  The CFAA authorizes a civil action by one "who suffers damage or loss by reason of a violation of this section . . . against the violator to obtain compensatory damages and injunctive relief or other equitable relief."  Plaintiff argues that the defined terms "damage" and "loss" do not contemplate receipt of lost profits damages, while Defendant argues that the use of the term "compensatory damages" means Congress intended to allow all forms of such damages, including lost profits damages.  Each side has different opinions from other Circuits to support their argument.

The Court starts by noting that the United States Court of Appeals for the Eleventh Circuit has not ruled upon this issue, nor apparently has any district court in the Southern District of Florida.  Defendant does cite to a Ninth Circuit opinion, Creative Computing v. Getloaded.com LLC, 386 F.3d 930, 935 (9th Cir. 2004), which concluded that loss of business and business goodwill are "economic damages," a term used in Section 1030(g) as a limitation on damages under the CFAA.   However, the Creative Computing decision did not address the issue raised by Plaintiff, which is that the 2001 CFAA Amendment defined the term "loss" more narrowly than assumed by the Ninth Circuit.[2]

---

[2]   Certain other published decisions relied upon by Defendant did not address the 2001 Amendments.  Pacific Aerospace & Electronics, Inc. v. Taylor, 295 F.Supp.2d 1188, 1196 (E.D. Wa. 2003) (preliminary injunction case which recognized use of CFAA against former employee who takes customer lists but did not analyze statutory language as injunction not sought under CFAA); EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 585 (1st Cir. 2001); Shurgard Storage Centers v. Safeguard Self Storage, Inc., 119 F.Supp.2d 1121 (W.D.Wa. 2000).

The 2001 CFAA Amendments added definitions to "damage" and "loss."  Loss is now defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

Plaintiff relies on a district court decision that rejects the exact lost revenue argument made by GTA in this case.  In Nexans Wires S.A. v. Sark-USA, Inc., 319 F.Supp.2d 468, 477 (S.D.N.Y. 2004), *aff'd*, 166 Fed.Appx. 559 (2nd Cir. 2006), the district court limited loss from lost revenue to those occurring from an interruption in service, tracking the language in § 1030(e)(11).  Nexans also cited Register.com, Inc. v. Verio, Inc., 126 F.Supp.2d 238, 252 n.12 (S.D.N.Y. 2000), a case decided before the 2001 Amendments.  In another recent case, the district court also limited damages such as lost revenue to those resulting from an interruption in service.  Cenveo Corp. v. CelumSolutions Software, 504 F.Supp.2d 574, 580-81 (D.Minn. 2007).

Defendant responds to this argument by arguing that while liability under the CFAA must be shown by "damage"[3] or "loss," as defined in the CFAA, once liability is established, the use of the phrase "compensatory damages" in the same sentence places no limit on the extent of damages a successful CFAA plaintiff can recover.

---

[3] The "term damage means any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).

Upon a review of the statutory language and the competing case law[4], the Court concludes that while the issue is a close one, the more appropriate reading of the statutory language is that any "loss" must be related to interruption of service.  In this case, the fact that Plaintiff copied files and allegedly stole clients from GTA did not cause an interruption of service as contemplated by the CFAA.  Rather, the CFAA statutory language evidences an intent to allow recovery for reasonable costs caused by interruptions in service or damage to a computer.  GTA would need to prove that the customer files were unavailable to GTA due to Plaintiff's actions in exceeding his authority to access the computer.  There is no evidence to support such a theory.  Simply copying the files and then contacting customers in those files to take their business is not causing a loss because of interruption of service.[5]

### III.  CONCLUSION

The Court grants Plaintiff's motion for partial summary judgment in that lost profits stemming from Plaintiff's copying of customer information is not compensable under the CFAA.  Therefore, because GTA cannot otherwise show "damage" or "loss"

---

[4] Each side also relies on an unpublished decision that directly conflict with one another.  Plaintiff cites to Resdev, LLC v. Lot Builders Ass'n, Inc., 2005 WL 1924743 (M.D.Fla 2005), which specifically held that compensatory damages are limited by the "loss" definition described above.  Defendant, however,  relies upon Frees, Inc. v. McMillian, 2007 WL 2264457 (W.D.La 2007), which specifically held that the definition of "loss" is merely a jurisdictional threshold, leaving no limitation on "compensatory damages," other than to "economic damages."

[5] Similarly, GTA has not shown that Plaintiff's deletion of any information, which could be construed as "damage" under the CFAA, resulted in at least $5,000 worth of damage.  Rather, it appears that the only allegations of damages are the lost business profits.

under the CFAA that meets the $5,000 jurisdictional threshold, Plaintiff is entitled to summary judgment on the entire CFAA counterclaim.  As to the after-acquired evidence defense, the Court denies Plaintiff's motion.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Partial Summary Judgment [DE 80] is hereby **GRANTED**, as to the CFAA counterclaim, and **DENIED** as to the after-acquired evidence defense;

2. The Court shall separately enter summary judgment in favor of Plaintiff on the Counterclaim;

3. This case remains set for Calendar Call at 1:30pm on April 17, 2008, at which time the Court will address the motions in limine filed on April 3, 2008.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 9th day of April, 2008.

JAMES I. COHN
United States District Judge

Copies furnished to:

Daniel Levine, Esq./Adam Chotiner, Esq.

Eric Gabrielle, Esq./Jennifer Price, Esq./Marissa Kelly, Esq./Bonita Navin, Esq.